**Opinion issued December 15, 2020**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-19-00868-CR**

**NO. 01-19-00869-CR**

————————————

**ROY ANTHONY GRAVES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 248th District Court**
**Harris County, Texas**
**Trial Court Case Nos. 1662602 & 1662603**

---

## MEMORANDUM OPINION

A jury convicted appellant, Roy Anthony Graves, of the third-degree felony

offenses of possession of a controlled substance, methamphetamine, in an amount

more than one gram and less than four grams, and unlawful possession of a firearm

by a felon. Having found true two enhancement allegations, the trial court assessed appellant's punishment at twenty-five years' confinement in each case, with the sentences to run concurrently. In two points of error, appellant argues that (1) the trial court abused its discretion in denying his motion to suppress and (2) the evidence is legally insufficient to support the charge of possession of a firearm by a felon. We affirm.

## Background

On the night of February 23, 2019, Houston Police Officers Raul Tellez and Julio Luna responded to a non-anonymous 911 call that a group of black males was selling drugs outside of the Modern Food Store, and that one of the men—a black male, approximately thirty years old, with curly hair—had shot at a vehicle. The officers, who were dressed in full police uniform and driving a marked patrol vehicle, arrived at the convenience store and observed a group of approximately six black males standing outside of the store, one of whom—appellant—matched the description provided by the 911 caller. As the officers approached, appellant separated himself from the group of men and quickly began to walk away. Officer Luna ordered appellant to "come here" or "stop." Appellant began running and fled across the street towards a nearby apartment complex.

Officers Tellez and Luna pursued appellant on foot and repeatedly told him to stop, but appellant ignored the commands. The officers also radioed for backup as

2

they chased appellant. As the officers pursued him, appellant reached for his waistband and fell forward on the pavement. Appellant rose, ran to the fence of the apartment complex, and attempted to jump over it but was prevented when his pants caught on the metal fencing. The officers caught up to appellant, pulled him down from the fence, and arrested him for evading detention. Upon searching appellant, Officer Tellez discovered plastic bags containing marijuana and Ecstasy pills in the waistband of appellant's underwear. While Officer Tellez was searching appellant, Officer Lafountain, who had responded to the call for backup, discovered a loaded, semiautomatic Remington R51 firearm in the street where appellant had fallen while fleeing from Officers Tellez and Luna.

The police transported appellant to jail. Appellant was subsequently charged with the felony offenses of possession of a controlled substance and unlawful possession of a firearm by a felon.

## Sufficiency of the Evidence

In his second point of error, appellant contends that the evidence is legally insufficient to support his conviction for unlawful possession of a firearm by a felon. We address this point of error first because it seeks the greatest relief. *See Finley v. State*, 529 S.W.3d 198, 202 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) (noting reviewing court will first address issues that, if sustained, require reversal and rendition of judgment, before turning to issues seeking remand).

3

## A.    Standard of Review

We review appellant's challenge to the sufficiency of the evidence under the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). We examine all of the evidence in the light most favorable to the jury's verdict to determine whether any "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 318–19; *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The jury may reasonably infer facts from the evidence presented, credit the witnesses it chooses, disbelieve any or all of the evidence or testimony proffered, and weigh the evidence as it sees fit. *See Canfield v. State*, 429 S.W.3d 54, 65 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). An appellate court determines "whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). In viewing the record, direct and circumstantial evidence are treated equally. *See id.* at 13. An appellate court presumes that the factfinder resolved any conflicting inferences in favor of the verdict and defers to that resolution. *See Jackson*, 443 U.S. at 326.

## B. Applicable Law

To establish unlawful possession of a firearm by a felon, the State must show that the accused was previously convicted of a felony offense and that he possessed a firearm after the conviction but before the fifth anniversary of his release from confinement, community supervision, parole, or mandatory supervision, whichever date is later. *See* TEX. PENAL CODE § 46.04(a)(1); *Williams v. State*, 313 S.W.3d 393, 397 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). A person possesses a firearm if he exercises actual care, custody, control, or management over it. *See* TEX. PENAL CODE ANN. § 1.07(39) ("'Possession' means actual care, custody, control, or management."). "Possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control." *Id.* § 6.01(b); *Hawkins v. State*, 89 S.W.3d 674, 677 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd).

Because the gun was not found on appellant or in his exclusive possession, the State must prove possession by affirmatively linking the weapon to appellant. *See Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); *Stout v. State*, 426 S.W.3d 214, 218 (Tex. App.—Houston [1st Dist.] 2012, no pet.). These links must be sufficient to show that appellant "was conscious of his connection with the weapon and knew what it was." *Jones v. State*, 338 S.W.3d 725, 742 (Tex. App.—Houston [1st Dist.] 2011), *aff'd*, 364 S.W.3d 854 (Tex. Crim. App. 2012). The

"affirmative links" rule is designed to protect the innocent bystander from conviction based solely upon his fortuitous proximity to a firearm belonging to someone else. *See Evans*, 202 S.W.3d at 161–62; *Jones*, 338 S.W.3d at 742.

Factors that may affirmatively link the defendant to a firearm include, but are not limited to, whether (1) the defendant was present when the search was conducted; (2) the firearm was in plain view; (3) the defendant was the owner of or had the right to control the location where the firearm was found; (4) the defendant was in close proximity to and had access to the firearm; (5) the defendant attempted to flee; (6) the defendant possessed other contraband when he was arrested; (7) the defendant's conduct indicated a consciousness of guilt, including extreme nervousness or furtive gestures; (8) the defendant had a special connection or relationship to the firearm; (9) the place where the firearm was found was enclosed; and (10) affirmative statements connected the defendant to the firearm, including incriminating statements made by the defendant when arrested. *See Jones*, 338 S.W.3d at 742. It is not the number of factors "affirmatively linking" the defendant that is dispositive, but rather the logical force of all of the evidence, direct or circumstantial. *Williams*, 313 S.W.3d at 398; *Evans*, 202 S.W.3d at 162. The absence of various links does not constitute evidence of innocence to be weighed against links present. *James v. State*, 264 S.W.3d 215, 219 (Tex. App.—Houston

6

[1st Dist.] 2008, pet. ref'd) (quoting *Hernandez v. State*, 538 S.W.2d 127, 131 (Tex. Crim. App. 1976)).

**C.    Analysis**

Appellant contends that the evidence adduced at trial was insufficient to support his conviction for unlawful possession of a firearm by a felon.  Rather, he argues, the evidence amounted to no more than a showing that he was present in a place where a gun was found.

Viewing the evidence in a light most favorable to the jury's verdict, the record establishes a number of links between appellant and the weapon.  After police apprehended appellant, another officer discovered the gun in plain view, lying in the middle of the street and in the same spot where Officers Tellez and Luna saw appellant fall during his flight.  Appellant was in close proximity to the weapon— approximately ten feet away—when he was caught attempting to jump over the fence.  The evidence showed that appellant repeatedly ignored Officers Tellez's and Luna's commands to stop running and attempted to flee from them before being apprehended.  Appellant was found with contraband in the waistband of his underwear.  Officers Tellez and Luna testified that appellant reached for his waistband before falling face first onto the pavement, and that he "seemed in a panic" when officers caught up to him, indicating a consciousness of guilt.  The evidence also showed that there were no other people in the street or in the immediate vicinity

of appellant's and the officers' path. Finally, Officer Tellez testified that, in the high-crime area where the events took place, it is highly unlikely that someone would leave a valuable item such as a gun lying in the street, implying that the gun was recently dropped there. A rational jury could have found these circumstances sufficient to show appellant knowingly possessed a firearm. *See Barlow v. State*, 586 S.W.3d 17, 24 (Tex. App.—Beaumont 2019, pet. ref'd) (finding sufficient affirmative links connected defendant to gun where evidence showed defendant had ready access to gun, defendant attempted to flee from police, and defendant appeared nervous during questioning); *James*, 264 S.W.3d at 219–20 (concluding that sufficient evidence affirmatively linked defendant to firearm where defendant was in close proximity to weapon, defendant was nervous, and defendant appeared to be on verge of fleeing); *see also Hughes v. State*, No. 01-09-00744-CR, 2011 WL 494775, at *4 (Tex. App.—Houston [1st Dist.] Feb. 10, 2011, pet. ref'd) (concluding sufficient evidence of affirmative links existed connecting defendant to gun; although no witness testified to having seen defendant holding or throwing gun, defendant was arrested immediately after he fled field where police found firearms, weapons were found in plain view, defendant fled police as they approached him, and defendant did not comply with officer's orders). The evidence is legally sufficient to support appellant's conviction for unlawful possession of a firearm by a felon. We overrule appellant's second point of error.

**Motion to Suppress**

In his first point of error, appellant contends that the trial court abused its discretion in denying his motion to suppress.

## A. Standard of Review

We review a trial court's denial of a motion to suppress under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). Under this standard of review, we afford "almost total deference to a trial court's determination of historical facts" if supported by the record. *Valtierra v State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). When, as here, a trial court enters explicit findings of fact, a reviewing court views the evidence in the light most favorable to the trial court's ruling and determines whether the evidence supports the factual findings. *See id.* The trial court's application of the law to those facts is reviewed de novo. *See id.* Absent a showing that the trial court abused its discretion by making a finding unsupported by the record, we defer to the trial court's findings of fact and will not disturb them on appeal. *Flores v. State*, 177 S.W.3d 8, 14 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (citing *Cantu v. State*, 817 S.W.2d 74, 77 (Tex. Crim. App. 1991)). A trial court does not abuse its discretion by denying a motion to suppress unless that decision lies outside the "zone of reasonable disagreement." *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010).

**B.    Applicable Law**

The Fourth Amendment of the United States Constitution provides that the police may reasonably detain someone without a warrant for a temporary investigative detention if they have reasonable suspicion to do so. *See Matthews v. State*, 431 S.W.3d 596, 602–03 (Tex. Crim. App. 2014); *see generally* U.S. CONST. amend. IV. "Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity." *Padilla v. State*, 462 S.W.3d 117, 123 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) (quoting *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007)). The court determines whether an officer has reasonable suspicion to detain a suspect based on the totality of the circumstances and viewed through an objective lens. *Matthews*, 431 S.W.3d at 603. "Although some circumstances may seem innocent in isolation, they will support an investigatory detention if their combination leads to a reasonable conclusion that criminal activity is afoot." *Id.*

In addition to protecting against unreasonable seizures, the Fourth Amendment also protects against unreasonable searches by the government. *See generally* U.S. CONST. amend. IV. A search conducted without a warrant is *per se* unreasonable unless it falls within one of the "specifically defined and well[-

10

]established exceptions" to the warrant requirement. *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003). When a search has been conducted without a warrant, the State carries the burden in a motion to suppress to establish the application of the exception for the requirement to obtain a warrant. *See id.* One such exception to the warrant requirement is a search incident to arrest. *See State v. Ford*, 537 S.W.3d 19, 24 (Tex. Crim. App. 2017) (requiring, for search incident to arrest, probable cause for arrest but not for search). "A search incident to arrest permits officers to search a defendant, or areas within the defendant's immediate control, to prevent the concealment or destruction of evidence." *McGee*, 105 S.W.3d at 615. The exception "places a temporal and a spatial limitation on searches incident to arrest, excusing compliance with the warrant requirement only when the search 'is substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest.'" *Marcopoulos v. State*, 548 S.W.3d 697, 703 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd) (quotations omitted). Whether a warrantless search is reasonable and, thus, constitutionally permissible is a question of law that appellate courts review de novo. *Kothe v. State*, 152 S.W.3d 54, 62 (Tex. Crim. App. 2004).

## C.     The Trial Court's Ruling

At the conclusion of the suppression hearing, the trial court denied appellant's motion and made the following findings of fact and conclusion of law:

I have reviewed everything submitted by the defense including the motions and briefs in support of the Motion to Suppress. I've also reviewed the one case, *Illinois v Wardlow*, that was submitted by the State. I'm going to deny the defendant's motion.

I believe that the search was reasonable. And scope and location, I believe that the officer had reasonable suspicion to approach given what the call was about, the location of the shooting, the group of men and a description of the shooter that the officer had a right to approach and then either -- whether or not the -- at that point I don't believe, although there was a statement that running alone does not justify, you need additional factors. There were, I believe, additional factors in this situation given what the call was for him to pursue Mr. Graves but either through a -- an arrest -- if you want to say that he was arresting him at the time and a search incident to arrest for evading or even simply that he pursued him.

He did testify that he had a right to detain him, I believe, even under a limited Terry stop because he had reasonable belief that he might be armed and dangerous given what the call was. And, also, he said that he was able to immediately ID the bulge as contraband based on his training and experience. So for those reasons, I'm going to deny the defendant's Motion to Suppress.

## D.    Analysis

Appellant contends that the trial court abused its discretion in denying his motion to suppress the contraband found in the waistband of his underwear. He argues that the officers did not have sufficient probable cause to make a warrantless arrest and, therefore, their subsequent search of him was unreasonable under the Fourth Amendment.

12

### 1. *Reasonable Suspicion to Detain Appellant*

Appellant contends that the officers did not have reasonable suspicion to detain him. Specifically, he argues that the only information the 911 caller gave police was "a black male in his 30s with curly hair," which could have applied to most, if not all, of the males standing outside the store, and the officers did not take the time to verify any of the information.

The record shows that a 911 non-anonymous caller[1] reported that a black male with curly hair, approximately thirty years old, had shot at a vehicle, and that a group of black males was selling drugs at the same location. Officer Tellez testified that the location of the reported shooting is a high-crime area known to law enforcement for "high activity of drugs and crime." The officers arrived approximately thirty seconds after the call came through dispatch and, upon arrival, they saw a group of black males loitering outside the convenience store, as the caller had reported.[2] *See Taflinger v. State*, 414 S.W.3d 881, 885 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (explaining that "[a] citizen's tip may justify the initiation of a [detention] if

---

[1]     Officers Luna testified that he and Officer Lafountain spoke with the 911 caller after appellant's arrest.

[2]     "Corroboration does not mean that the officer must personally observe the conduct that causes him to reasonably suspect that a crime is being, has been, or is about to be committed." *Brother v. State*, 166 S.W.3d 255, 259 n.5 (Tex. Crim. App. 2005). "Rather, corroboration refers to whether the police officer, in light of the circumstances, confirms enough facts to reasonably conclude that the information given to him is reliable and a temporary detention is thus justified." *Id.*

the tip contains 'sufficient indicia of reliability' and the officer corroborates those facts supplied by the citizen-informant"). Officers Tellez and Luna noted that appellant was the only person in the group to match the 911 caller's description of the shooter because appellant was the only one with curly hair as all the others had short hair. When the officers approached the group in their patrol car, only appellant immediately separated himself from the group and began to quickly walk away.

Under the totality of the circumstances, we conclude that the officers possessed the particularized reasonable suspicion necessary to detain appellant. *See Matthews*, 431 S.W.3d at 605 (concluding circumstances established reasonable suspicion to support investigatory detention where, in addition to anonymous 911 call, officers discovered defendant in high-crime area late at night that was known for drug and weapon offenses, and defendant was dressed as 911 caller had described, was sitting in driver's seat of van that 911 caller had described, and refused to comply with officers' request to show both hands); *Taflinger*, 414 S.W.3d at 886–87 (holding that officer had reasonable suspicion to detain defendant when officer received non-anonymous tip, officer was able to corroborate tip quickly, defendant's vehicle matched description given and no other vehicle matched description).

### 2.     *Probable Cause to Arrest Appellant*

The evidence also shows that the officers had probable cause to arrest appellant for the offense of evading detention.

Under the Code of Criminal Procedure, a peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view. *See* TEX. CODE CRIM. PROC. art. 14.01(a). A person commits the offense of evading arrest if he intentionally flees from a person he knows is a peace officer attempting lawfully to arrest or detain him. TEX. PENAL CODE § 38.04(a).

Here, when Officers Tellez and Luna arrived at the convenience store, intending to detain appellant as well as the other men in the group, they were dressed in full police uniform, with badges, and were driving a marked patrol car. As the officers approached, appellant separated himself from the others in the group and began to quickly walk away from the officers. Officer Luna ordered appellant to "come here" or "stop." However, rather than comply, appellant ignored the officers' repeated commands to stop and began sprinting across the street away from the officers and towards a nearby apartment complex. This evidence demonstrates that appellant intentionally fled from Officers Tellez and Luna, who he knew were peace officers and who were attempting lawfully to detain him, and in doing so, committed the offense of evading detention in the officers' presence, giving them probable cause to arrest him for that offense. *See id.*; TEX. CODE CRIM. PROC. art. 14.01(b)

15

("A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view.").

### 3.    *Search Incident to Arrest*

Because the officers' search of appellant occurred without a warrant, the State carried the burden to establish the application of an exception to the warrant requirement. *See Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005).

As discussed above, when Officers Tellez and Luna apprehended appellant, they arrested him for the offense of evading detention. Upon effecting the lawful arrest of appellant, Officer Tellez searched appellant and discovered contraband in appellant's waistband. *Carrasco v. State*, 712 S.W.2d 120, 122–23 (Tex. Crim. App. 1986) (stating that search that is "proximate in time and place to the arrest, [and] that is limited to the person of the arrestee and the area within his reach is a permissible search incident to arrest"); *State v. Pena*, 581 S.W.3d 467, 482–83 (Tex. App.—Austin 2019, pet. ref'd) (concluding that officer lawfully seized drug pipe from defendant's pocket pursuant to search incident to defendant's arrest for traffic offense); *see also see United States v. Robinson*, 414 U.S. 218, 235 (1973) ("It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment.").

In summary, the officers had reasonable suspicion to detain appellant based on the totality of the circumstances, and they had probable cause to arrest him for the offense of evading detention. The officers' search of appellant, during which they discovered marijuana and Ecstasy pills in his waistband, was a lawful search incident to arrest. The trial court did not abuse its discretion in denying appellant's motion to suppress. Accordingly, we overrule his first point of error.

## Conclusion

We affirm the trial court's judgment.


Russell Lloyd
Justice


Panel consists of Justices Keyes, Lloyd, and Landau.

Do Not Publish. TEX. R. APP. P. 47.2(b).